Richard Herndobler, Minor, by Harry Herndobler, His Father and Next Friend, Appellee, v. Calvin Goodwin, Appellant.

Gen. No. 41,548.

268

Opinion filed April 23, 1941. Rehearing denied May 21, 1941.

CASSELS, POTTER & BENTLEY, of Chicago, for appellant; LESLIE H. VOGEL and RICHARD H. MERRICK, both of Chicago, and RALPH F. POTTER, of counsel.

A. B. MANION and EARL F. SCHOENING, both of Chicago, for appellee; A. B. MANION, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Plaintiff, a four-year-old boy, filed a complaint in the circuit court of Cook county for personal injuries suffered as a result of the alleged negligence of the defendant in the operation of an automobile. The jury returned a verdict finding the defendant guilty and assessing plaintiff's damages at the sum of $6,500. The court overruled defendant's motion for a new trial and entered judgment on the verdict. This appeal followed.

The accident occurred on July 9, 1938, a few minutes before 8:00 a. m. on Avenue M, between 101st and 102nd street in the city of Chicago. Avenue M is 38 feet wide from curb to curb and runs north and south. 102nd street is 32 feet wide from curb to curb and runs east and west. The northeast corner of the intersection is vacant and unimproved for a distance of

more than 104 feet north of the north building line of 102nd street. The home of the boy is situated on the east side of Avenue M about 110 feet north of 102nd street. The plaintiff, a boy about three feet in height, was standing on the parkway between the curb and the sidewalk on the east side of the street, about five feet behind the rear of a car parked in front of his home. He was watching a relative pack the car. Plaintiff maintains that the evidence shows that there was only one car parked in front of his home. Defendant, on the other hand, insists that there were two or three automobiles parked in front of plaintiff's home, and that plaintiff was injured when he darted into the street between two of these automobiles. Plaintiff's father had just alighted from the right-hand side of a southbound automobile on the opposite or west side of Avenue M and about 60 feet south of their home. When the boy saw his father cross the street he started to run toward him. The defendant Goodwin was driving a 1935 Studebaker car in a northerly direction upon Avenue M and approaching 102nd street at a speed (according to defendant) of 20 to 28 miles per hour. As he approached 102nd street he applied his brakes and crossed the intersection at 18 to 20 miles per hour. Goodwin testified that at this time he saw a car which had been proceeding in a southerly direction on Avenue M pull over to the west side of the street and stop west of the Herndobler home. Plaintiff's father was a passenger in this car. Goodwin stated that he was about 20 feet south of the car when it stopped. He further testified that as the car came to a stop, the wheels turned out to the center and drew his (defendant's) attention; that the left door started to open or did open and there was a movement which made him (Goodwin) glance to his left; that his car was about even with the car which had come to a stop; that the father of the boy saw the boy leave the safety of the curb and also saw Goodwin's

car approaching from the south, and yelled; that the boy's mother, who was on the sidewalk on the east side of the street, screamed; that he (Goodwin) heard the scream, jammed on his brakes, looked straight ahead but did not see anything; that he started to release his brakes when he heard another scream and he then came to a dead stop, and that between the time he heard the first scream and the time he stopped his car he traveled about 20 feet along Avenue M. On behalf of plaintiff there is testimony that after plaintiff's father had alighted from the southbound car in which he had been riding, plaintiff saw his father and started to run toward him; that his father glanced to the south and saw defendant's car just entering the intersection of 102nd street and Avenue M, or over 120 feet south of the child; that the defendant's car was northbound; that the father yelled and that when he did so the child turned and started to run north on Avenue M and was struck by defendant's car, northbound, about even with the middle of the car that was parked directly in front of the Herndobler home. The evidence shows that when the father yelled he ran into the street; that before he could reach the boy, defendant's car passed by him, and that when it passed him, defendant was looking to the west and back over his left shoulder. There is testimony that at the time of the accident there was no car parked between the point where the child left the curb on the east side of Avenue M and 102nd street, a distance of 120 feet or more. There is testimony that the defendant's car was going 40 to 45 miles an hour as it crossed 102nd street. Defendant testified that he stopped within 20 feet after he heard the scream. Plaintiff's father testified that the defendant's car traveled about 90 feet after it struck the child before coming to a stop. The evidence shows that both of plaintiff's legs were broken a few inches below the hip joint with displacement of the

upper and lower fragments; that he received two gashes in his head, each requiring five sutures; that these gashes extended down from the skull; that when he was examined at the hospital his skin was cold and clammy, his pupils dilated and his pulse weak and thready; and that he suffered a brain injury, cerebral depression of the brain centers and had skin abrasions on his face, arms and hands. It was necessary, due to the location and severity of the breaks, to place both legs in Thomas splints, and he was placed in a bed with his head down and feet up at a 45 degree angle with pulleys and weights attached to the Thomas splints. He hung in that position for one month. He was then placed in a plaster cast completely covering the lower part of his body. He remained in the cast a little over a month. When the cast was removed, his feet were everted, that is, turned out. At that time he was unable to walk, and had to learn to walk all over again. He was confined to his bed for some weeks after the cast was taken off. He started to crawl a few weeks later. He was unable to stand by himself or get around on his legs until the spring of the following year, then, when he walked he threw his feet out and was stiff from his knees up. There is evidence that when he started to walk he walked with a "Charlie Chaplin manner of throwing his feet." Plaintiff maintains that at the time of the trial this condition persisted, and that the jury had an opportunity to observe such condition for themselves. There was evidence that since the accident and up to the time of the trial the boy had been nervous and had not slept well and had been under the care of a doctor.

It is obvious that the testimony presented to the jury a question of fact as to whether defendant so carelessly and negligently drove his automobile that by means of such negligence and as a proximate result thereof the automobile struck the plaintiff, by means

whereof he sustained the injuries complained of. Defendant maintains that the trial court committed error in giving the following instruction:

"You are hereby instructed that no owner or operator of an automobile is necessarily exempt from liability for collision on a public highway by simply showing that at the time of the accident he did not run at a rate of speed exceeding the limit allowed by the law. On the contrary, he still remains bound to anticipate that he may meet persons at any point in the public highway and he must keep a proper lookout for them, and keep the motor vehicle under such control as will enable him to avoid a collision with another person using said highway." This instruction apparently was taken from the language found in *Kessler v. Washburn,* 157 Ill. App. 532. The opinion in the *Kessler* case states, however, that the "true test is that he must use all the care and caution which an ordinarily careful and prudent driver would have exercised under the same circumstances." Plaintiff insists that there is nothing in the instruction that in any way misled the jury as to the degree of care required of defendant. He also calls our attention to the fact that the instruction was one of a series of 28 instructions, and that the jury was fully instructed as to the degree of care defendant was required to exercise. At best, this instruction is misleading and confusing. It cast upon the defendant the burden of avoiding a collision with another person under any and all circumstances. Under the instruction, exemption from liability is determined by the ability of the driver to avoid a collision. It requires him to maintain such a lookout for pedestrians and to keep such control of his vehicle as will enable him to avoid a collision at all hazards. The instruction places upon the defendant a duty greater than that required by the law. This instruction was clearly erroneous.

Plaintiffs do not cite any authority which supports the giving of such an instruction. We do not believe that under the facts and circumstances of this case the damage done by the giving of the erroneous instruction was cured or mitigated by other instructions. The jury was required to pass on a question of fact and it was important that they be properly informed as to the law applicable thereto. Defendant also contends that an instruction on the subject of damages is erroneous in that it told the jury that in determining the amount of damages they have the right to take into consideration "such future suffering and loss of health, if any, as the jury may believe from the evidence before them in this case he has sustained or will sustain by reason of such injuries, if any." Defendant insists that there is no basis in the evidence for the giving of this instruction, and that under it the jury was permitted to assess damages by way of conjecture and without proof. In our opinion, there is evidence in the record warranting the giving of this instruction.

Defendant insists that the court erred in admitting into evidence a photograph of the plaintiff lying in bed and portraying the weight and pulley arrangement. He argues that the only purpose of introducing this photograph was to unduly excite the emotions and sympathy of the jury for the plaintiff. The injuries suffered by the child were painful and serious. We do not believe that the introduction of the photograph unduly excited the jury's emotions. The injuries and treatment had all been fully described, and the introduction of the photograph under the circumstances did not constitute error. Defendant also complains that plaintiff's counsel made statements during the trial in his argument to the jury which were so improper, prejudicial and inflammatory as to require a reversal of the judgment. Counsel for each party indulged

in conduct and remarks which may be justly criticized. We would not, however, feel constrained to direct a new trial because of such conduct and remarks.

Finally, defendant argues that the judgment is excessive. A mere statement of the injuries suffered by this child should satisfy anyone that the damages awarded by the jury were not excessive.

Because of the error in giving an erroneous instruction, the judgment of the circuit court of Cook county is reversed and the cause remanded for a new trial.

*Reversed and remanded for a new trial.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.